UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KARIMAH BILAL,<br><br>Plaintiff,<br><br>v.<br><br>METROPOLITAN POLICE DEPARTMENT,<br><br>Defendant. | Civil Action No. 25-189 (JEB) |

**MEMORANDUM OPINION**

Karimah Bilal filed this lawsuit against the Metropolitan Police Department alleging multiple instances of discrimination on account of her race, sex, religion, and association with a person with a disability in violation of Title VII of the Civil Rights Act and the Americans with Disabilities Act. These adverse actions, she claims, ultimately forced her to resign from MPD. Defendant now moves to dismiss all of Bilal's counts, asserting that she both failed to exhaust her administrative remedies and does not state a viable claim. As the Court agrees, it will grant the Motion.

**I.     Background**

The Court draws on the facts as pled in the Complaint, assuming them to be true for the purposes of the Motion. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).

Bilal is a Black woman who began her tenure with MPD in late 2015, where she primarily worked as a Public Affairs Specialist. See ECF No. 1 (Compl.) at ECF p. 6. Four

1

years later, she was given additional responsibility as a Program Manager.  Id.  Plaintiff's experience with MPD, however, was not all roses.  Dustin Sternbeck, her supervisor, repeatedly made "racially charged and sexually inappropriate comments," id., ¶ 2, and "mocked [Bilal's] child's disability."  Id., ¶ 6.  Additionally, Plaintiff notes that "Sternbeck only instructed Black employees . . . to perform tasks outside their job duties while assigning more complex assignments to non-Black employees."  Id., ¶ 3.  When she refused to perform these tasks, Sternbeck subjected her to unspecified "disparate" treatment.  Id.

Early in the COVID-19 pandemic in June 2020, Bilal began requesting telework accommodations "to care for her minor children" — requests that she continually made until her resignation in April 2021.  Id., ¶ 4.  These requests "were consistently denied despite similar accommodations being granted to White and childless employees."  Id.  She also notes in passing that "she was no longer authorized to telework" in August 2020, although the Complaint nowhere alleges that such an agreement existed.  Id. at ECF p. 6.  As a result of the denials, Plaintiff "exhaust[ed] all available leave and remedies to care for her children during school and daycare closures."  Id., ¶ 7.

Bilal's employment with MPD meanwhile deteriorated in other ways.  In June 2020, Sternbeck informed her that she would not formally obtain the Program Manager position.  Id. at ECF p. 6.  After Plaintiff complained to Matthew Bromeland, Chief of Staff, her "duties and work privileges were stripped" in ways she does not specify.  Id.  She then brought her complaints to her Union President and to the Chief of Police.  Id. at ECF pp. 6–7.  Almost two weeks later, Bilal "filed an internal EEO complaint for discrimination based on race and family responsibilities."  Id. at ECF p. 7.  In January 2021, she filed a formal charge of discrimination.  Id. at ECF pp. 6–7.

2

Bilal alleges that, after she filed her EEO complaint, "MPD retaliated by dramatically lowering her performance evaluation scores, excluding her from work correspondence and activities, refusing to communicate with her, locking her out of work shared accounts without notice, and refusing [telework and childcare] accommodations to return to work." Id., ¶ 8; see also id., ¶ 9. In April 2021, "after exhausting all available leave and remedies," Bilal resigned from her position "to avoid financial hardship." Id., ¶ 11.

Several years later, the EEOC, having made no determination on Plaintiff's charges of discrimination, issued her a right to sue letter in October 2024. See ECF No. 1-1 (EEOC Letter). Bilal subsequently filed this lawsuit on January 22, 2025. See Compl. at ECF p. 1. Defendant now moves to dismiss. See ECF No. 6 (MTD).

## II.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). The court "must treat the complaint's factual allegations as true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted).

Although notice-pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), the plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The court, accordingly, need not accept as true "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts alleged in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

**III.   Analysis**

Plaintiff has sued MPD for various alleged instances of discrimination. See Compl. at ECF pp. 1, 5–7. She brings a slew of claims against Defendant: (1) Religion Discrimination; (2) Sex Discrimination; (3) Race Discrimination; (4) Retaliation; (5) Associational Discrimination; (6) Failure to Accommodate; and (7) Constructive Discharge. See Compl. at ECF p. 4. MPD moves to dismiss on the grounds of lack of exhaustion and facial deficiency. See MTD at 1–2. The Court will grant the Motion without considering Defendant's alternative point that MPD itself is *non sui juris*. See id. at 1, 4–5.

   A.   Religion and Sex Discrimination

Plaintiff has alleged that MPD discriminated against her on the basis of religion and sex. See Compl. at ECF p. 4. In seeking dismissal, Defendant contends that because Bilal did not raise either of these claims in her administrative complaint, they must be dismissed for lack of exhaustion. See MTD at 6–7. Indeed, her initial EEO complaint contains no mention of religion or sex, and she never identified either as a basis for discrimination. See Compl. at ECF pp. 6–7 (checking "race," "retaliation," and "disability" boxes, but not "religion" or "sex").

"Title VII requires that a plaintiff exhaust her administrative remedies prior to bringing a civil action in federal court." Morgenhan v. Shinseki, 630 F. Supp. 2d 56, 59 (D.D.C. 2009) (citing Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)). "A plaintiff fails to exhaust her administrative remedies when the complaint she files in federal court includes a claim that

4

was not raised in the administrative complaint." Id. at 60 (citing Park, 71 F.3d at 907). Dismissal of the action is proper under such circumstances. See Niskey v. Kelly, 859 F.3d 1, 7 (D.C. Cir. 2017). It is true that the failure to exhaust is "typically resolved at summary judgment." Clark v. Johnson, 206 F. Supp. 3d 645, 655 (D.D.C. 2016). Plaintiff, however, pleads all the relevant facts herself, see Compl. at ECF pp. 4–7, thereby "reveal[ing] the exhaustion defense on its face." Thompson v. DEA, 492 F.3d 428, 438 (D.C. Cir. 2007). The Court may consequently resolve the legal issues relating to exhaustion at this stage. See Morris v. McCarthy, 825 F.3d 658, 666 (D.C. Cir. 2016) (upholding dismissal for failure to exhaust).

Perhaps sensing her shortcomings here, Plaintiff never responds to this exhaustion argument in her Opposition. See generally ECF No. 9 (Opp.). The Court, accordingly, will treat this point as conceded and dismiss these counts for failure to exhaust.

B.   Race Discrimination

Bilal next alleges that MPD did not award her a promotion to Program Manager and forced her to "perform tasks outside [of her] job duties" because of her race. See Compl., ¶¶ 1, 3; see also id. at ECF p. 6. She also alleges that her telework and childcare-accommodation denials were motivated in part by racial bias. Id., ¶ 9. She highlights Sternbeck's "racially charged . . . comments, . . . differential treatment of Black employees, and preferential promotions and accommodations for White employees" to demonstrate discriminatory intent. Id., ¶ 2. Defendant contends that these claims should be dismissed because "Plaintiff fails to allege any facts that show an inference of discrimination." MTD at 6.

The "essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008). Bilal

suffered an "adverse employment action" if the actions by MPD imposed "some harm respecting an identifiable term or condition of employment," but the harm incurred need not be significant. Muldrow v. City of St Louis, Missouri, 601 U.S. 346, 354–55 (2024); see also Chambers v. District of Columbia, 35 F.4th 870, 874–75 (D.C. Cir. 2022). Although Plaintiff need not plead all the elements of a *prima facie* case of discrimination, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (listing the elements), the factual allegations in the Complaint must give rise to a plausible inference of discrimination. See Gordon v. U.S. Capitol Police, 778 F.3d 158, 161–62 (D.C. Cir. 2015). The pleading standard "cannot be reduced to a mechanical formula; it is sensitive to the specific context of each case" but, overall, "is not onerous." Joyner v. Morrison & Foerster LLP, 2025 WL 1717402, at *3, 5 (D.C. Cir. June 20, 2025) (quotation marks omitted).

"To plead intentional discrimination, a plaintiff cannot merely invoke [her] race, but must allege some facts to show that race was the reason for the defendant's action." Wilson v. DNC Servs. Corp., 315 F. Supp. 3d 392, 400 (D.D.C. 2018). Racially insensitive remarks can be direct evidence of discrimination by themselves "show[ing] bias . . . in the employment decision," Wilson v. Cox, 753 F.3d 244, 247 (D.C. Cir. 2014) (quotation marks omitted), or indirect evidence when discrimination "must instead be inferred from the statement based on what was said and the surrounding circumstances." Conn v. Am. Nat'l Red Cross, 149 F. Supp. 3d 136, 147 (D.D.C. 2016) (emphasis omitted). The dissimilar treatment of a similarly situated comparator without the protected characteristic is also relevant. See Brown v. Sessoms, 774 F.3d 1016, 1022 (D.C. Cir. 2014). While comparator theories must do more than "simply allege that the plaintiff was treated differently from a similarly situated comparator," Bilal need not plead

6

facts showing that the comparator is "nearly identical" to her "in all relevant aspects." Joyner, 2025 WL 1717402, at *4 (quotation marks omitted).

Although Sternbeck's racially charged comments are certainly concerning, Plaintiff here has not linked them to the aforementioned adverse actions. She has not indicated when these comments were made or how they were connected to her denial of promotion. It is wholly unclear, for instance, if there was any temporal proximity between the comments and the refusal to promote Plaintiff to the Program Manager position. See Abdelhamid v. Lane Constr. Co., 744 F. Supp. 3d 10, 20 (D.D.C. 2024) (noting evidence that remark was "temporally close in time" to adverse action can demonstrate nexus) (quotation marks omitted). Without more, this allegation "[does] not permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.

Plaintiff's comparator-group evidence is also insufficiently specific. To nudge a claim from speculative to plausible, the comparator must be "similarly situated to the plaintiff in at least some relevant respects," and the complaint must contain "enough detail" for the court to "plausibly infer that discrimination caused" the adverse action. Joyner, 2025 WL 1717402, at *4; see also Sessoms, 774 F.3d at 1023 (drawing direct comparisons between multiple aspects of plaintiff and her comparator's circumstances in evaluating discriminatory-denial-of-tenure claim). While this standard "is sensitive to the specific context in each case," Joyner, 2025 WL 1717402, at *3, Bilal misses the mark here.

Her allegations that only Black employees were assigned tasks outside the scope of their position, see Compl., ¶ 3, and that White employees were granted accommodations that were denied to Plaintiff, id., ¶ 4, contain no further information to show that any employee was similarly situated to her. Id., ¶¶ 2–4. Indeed, it appears that Plaintiff has also alleged a non-

7

racial basis for at least some of her disparate treatment. See id., ¶ 3 ("Sternbeck treated the plaintiff disparately as a result of no longer performing assignments outside the scope of her position."). As a result, the Complaint does not state a plausible claim for relief on this basis. See Joyner, 2025 WL 1717402, at *5 ("[T]he complaint includes no information about the other [employees'] experience or qualifications relative to [plaintiff's]."); L. Xia v. Tillerson, 865 F.3d 643, 660 (D.C. Cir. 2017) (dismissing discrimination claims relying on comparator evidence because of lack of alleged factual similarities); Mapp v. District of Columbia, 993 F. Supp. 2d 22, 26 (D.D.C. 2013) (finding bare allegation that plaintiff "was treated disparately compared to other similarly situated" employees insufficient to state plausible Title VII claim).

      The claims alleging denial of telework accommodations, furthermore, do not state an adverse employment action. While Muldrow does not require a significant harm for a Title VII claim, it does mandate that the harm be connected to "an identifiable term or condition of employment." 601 U.S. at 355. Denials of telework requests, however, do not burden a "term or condition of employment" without some indication that the employee is entitled to the benefit. See Wilson v. Noem, 2025 WL 1000666, at *22 (D.D.C. Apr. 3, 2025) (collecting cases). In short, Plaintiff must allege facts showing that telework accommodations were a "term or condition" of her employment for the denial of those accommodations to constitute an adverse employment action. Although Bilal does allege that she "was no longer authorized to telework" in August 2020, see Compl. at ECF p. 6 (emphasis added), she also indicates that she was "denied telework . . . from June 2020 to April 2021." Id., ¶ 9. Indeed, the Complaint never alleges any times where Plaintiff was authorized to telework, merely citing instances where such accommodations were denied. This is insufficient to show harm to an identifiable term or condition of employment. Wilson, 2025 WL 1000666, at *22 (dismissing telework-denial claim

8

because "[p]laintiff did not have an approved telework schedule and there is no evidence that he had a vested right to telework").

Overall, while Plaintiff's factual allegations touch on certain essential elements of a Title VII claim, they do not cohere into a plausible claim for relief. Even when the racially insensitive comments and comparator-group evidence are taken together, the Court is left only to speculate that Bilal's loss of promotion was "because of" racial discrimination. Baloch, 550 F.3d at 1196. It will therefore grant the Motion as to race discrimination.

    C.    Retaliation

Next, Bilal alleges that MPD retaliated against her after she filed an EEO complaint in August 2020 by "dramatically lowering her performance evaluation scores, excluding her from work correspondence and activities, refusing to communicate with her, locking her out of work shared accounts without notice, and refusing accommodations to return to work." Compl., ¶ 8. She also alleges that the refusal of telework and childcare accommodations from June 2020 to April 2021 was "tied to her EEO activity." Id., ¶ 9.

To state a *prima facie* case for retaliation, Bilal must show that "(1) [she] engaged in protected activity; (2) [she] was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quotation marks omitted). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quotation marks omitted); see also Steele v. Schafer 535 F.3d 689, 696 (D.C. Cir. 2008). It "[t]ypically . . . involves a significant change in employment status, such as hiring, firing, failing

to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Bridgeforth v. Jewell, 721 F.3d 661, 663 (D.C. Cir. 2013). It does not encompass, however, a "[m]inor . . . employment action[] that an irritable, chip-on-the-shoulder employee did not like." Id. (quotation marks omitted). At the pleading stage, a plaintiff must also "establish facts adequate to permit an inference of retaliatory motive." Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985) (quotation marks omitted).

Plaintiff's retaliation claims based on telework and childcare-accommodation denials occurring before she filed her EEO complaint go nowhere. As Defendant points out, "It is axiomatic that for an action to be retaliatory, the adverse action must occur after the protected activity." MTD at 8; see also Slate v. Pub. Def. Serv. for the Dist. of Columbia, 31 F. Supp. 3d 277, 310 (D.D.C. 2014).

Bilal's telework and childcare-accommodation denials occurring after the EEO claim also do not measure up. As mentioned above, Plaintiff must demonstrate that the actions taken by Defendant "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 68. Any individual denial of a telework request does not rise to that level, given that she does not allege a preexisting telework arrangement. Cf. Saunders v. Mills, 172 F. Supp. 3d 74, 100–01 (D.D.C. 2016) (distinguishing between initial denials of telework requests, which are not materially adverse, with suspending existing arrangements, which can be materially adverse). Even if it did, it is hard to imagine how the continued denial of benefits post-EEO claim can constitute retaliation. See Bridgeforth, 721 F.3d at 663 ("Typically, a materially adverse action in the workplace involves . . . a decision causing [a] significant change in benefits.") (quotation marks omitted).

The rest of Bilal's retaliation claims also fall flat. For example, this Circuit has consistently held that bad performance evaluations are not materially adverse unless they are tied to some objectively tangible harm. See, e.g., Taylor v. Solis, 571 F.3d 1313, 1321 (D.C. Cir. 2009); Baloch, 550 F.3d at 1199. Here, Plaintiff never alleges any such harm — *e.g.*, the loss of a bonus. MPD's exclusion of Bilal from "work correspondence and activities," as well as shared accounts, and its "refus[al] to communicate with her," Compl., ¶ 8, are also slights and grievances that Title VII does not proscribe without any supporting allegations demonstrating tangible harm. See White, 548 U.S. at 68 (noting that reporting discrimination "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience"); Bridgeforth, 721 F.3d at 663. The Court therefore will dismiss the retaliation claims.

   D.   ADA Claims

Bilal also alleges that MPD discriminated against her under the ADA, both by subjecting her to adverse actions based on her association with her disabled child and by failing to accommodate her. See Compl., ¶¶ 1, 4, 6, 9. The Court will consider each in turn.

      1.   *Associational Discrimination*

The ADA prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). To establish a *prima facie* case, a plaintiff must demonstrate that: "(1) the plaintiff was 'qualified' for the job . . . ; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff was known by [her] employer at the time to have a relative or associate with a disability"; and (4) it can be reasonably inferred that "the disability of the relative . . . was a determining factor" in the

11

decision. Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1085 (10th Cir. 1997); see also Chisholm v. District of Columbia, 666 F. Supp. 2d 96, 111 (D.D.C. 2009) (citing Den Hartog for discussion of associational discrimination). The ADA does not, however, "require an employer to make any 'reasonable accommodation' to the disabilities of relatives or associates of an employee who is not [herself] disabled." Den Hartog, 129 F.3d at 1084 (quoting 42 U.S.C. § 12112(b)(5)). In other words, only adverse actions taken because of a relative's disability itself are unlawful under the ADA, while adverse actions taken because of the work-related consequences of that disability — e.g., the need for an alternative schedule to accommodate caregiving responsibilities — are not unlawful.

      The Court finds the Tenth Circuit's test persuasive and applies it here. Bilal alleges that she was discriminated against "due to her association with her disabled child." Compl., ¶ 6. She cites Sternbeck's "mock[ing] her child's disability" and the repeated denial of telework and childcare accommodations, despite the fact that "White and childless colleagues" received such accommodations "without similar scrutiny or demands." Id., ¶¶ 6, 9. MPD responds that, just as with Bilal's race-discrimination claims, she has not "plausibly connect[ed] any adverse action to her association with her disabled child." MTD at 9–10. The question, accordingly, is whether Plaintiff has alleged sufficient facts to enable the Court to plausibly infer that MPD denied her telework and childcare-accommodation requests because of her child's disability. See Chisholm, 666 F. Supp. 2d at 111–12 (citing Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509–10 (3d Cir. 2009)).

      The Court finds that Plaintiff has not met her burden. First, no facts in the Complaint — even including Sternbeck's mockery — support the inference that her requests were denied because of her child's disability. As to comparators, she would have to allege that childcare

accommodations were granted to similarly situated employees whose children were not disabled. As she has not done so, the Court will dismiss her disability-association claims.

### 2. *Failure-to-Accommodate Claims*

To state a *prima facie* case for a failure-to-accommodate claim, Bilal must plausibly allege "(1) that [she] has a disability under the ADA; (2) that the employer had notice of the disability; (3) that [Bilal] could perform the essential functions of the position either with reasonable accommodation or without it; and (4) that the employer refused to make the accommodation." Hill v. Assocs. for Renewal in Educ., Inc., 897 F.3d 232, 237 (D.C. Cir. 2018) (citing Solomon v. Vilsack, 763 F.3d 1, 9 (D.C. Cir. 2014)). As in her disability-association claim, Bilal rests her argument on MPD's failure to "provide reasonable accommodations for [her] to care for her minor children . . . during the COVID-19 pandemic from June 2020 to April 2021." Compl., ¶ 4.

As Plaintiff has not contested that she never exhausted this claim, the Court can dismiss it on that basis. Marshall v. Fed. Exp. Corp., 130 F.3d 1095, 1098 (D.C. Cir. 1997) ("Before bringing suit in federal court, ADA plaintiffs, like those under Title VII, must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it."). Even if she had properly raised it below, however, the claim is a nonstarter: Bilal has not alleged that she has a disability. Rather, she has alleged merely that her child has a disability. See MTD at 10. She therefore does not state a failure-to-accommodate claim. See 42 U.S.C. § 12112(b) (limiting liability to discrimination "because of the disability of such applicant or employee") (emphasis added).

      E.      Constructive Discharge

Last but not least, Bilal brings a constructive-discharge claim against MPD. See Compl., ¶ 11 ("Continuous denial of accommodations, coupled with retaliation and disparate treatment, forced the plaintiff to resign."); see also Opp. at 10. Defendant again argues that Plaintiff failed both to exhaust her administrative remedies prior to filing this suit and to adequately plead a constructive-discharge cause of action. See MTD at 11–12.

Constructive discharge has three basic elements: "(1) [I]ntentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment." Walden v. Patient-Centered Outcomes Rsch. Inst., 177 F. Supp. 3d 336, 346 (D.D.C. 2016) (quoting Douglas-Slade v. LaHood, 793 F. Supp. 2d 82, 102 (D.D.C. 2011)). "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" Pa. State Police v. Suders, 542 U.S. 129, 141 (2004); see also Steele, 535 F.3d at 695. "The kinds of situations where courts have upheld constructive-discharge findings tend to involve extreme mistreatment or thinly veiled (or even overt) threats of termination." Robinson v. Ergo Sols., LLC, 85 F. Supp. 3d 275, 283 (D.D.C. 2015) (quoting Kalinoski v. Gutierrez, 435 F. Supp. 2d 55, 78 (D.D.C. 2006)).

Plaintiff does not contest that she never exhausted her administrative remedies prior to raising this constructive-discharge claim. See MTD at 12; ECF No. 10 (Reply) at 2. This alone justifies dismissal. In any event, her purported working conditions do not rise to the constructive-discharge level. The Court agrees with Defendant that she has alleged "nothing more than ordinary tribulations of the workplace, which are not enough to rise to the level of a hostile work environment, let alone conditions that would support a constructive discharge

14

claim." MTD at 12; see also Peters v. District of Columbia, 873 F. Supp. 2d 158, 204 (D.D.C. 2012) (noting that failure to state hostile-work-environment claim necessarily implies failure to state constructive-discharge claim). None of the slights that Plaintiff experienced rises to the level even of a hostile environment; "[f]or there to be a hostile work environment, the plaintiff must allege more severe conduct, such as frequent and extended abusive statements and interference with medical care." Sandler v. Blinken, 2022 WL 4547557, at *10 (D.D.C. Sept. 29, 2022). Nor are the denials of accommodations or any other actions alleged in her retaliation claims sufficient to plead constructive discharge. Id. (noting accommodation denials and performance evaluations are "work-related actions by supervisors," which are generally not "sufficient for a hostile work environment claim") (quoting Munro v. LaHood, 839 F. Supp. 2d 354, 366 (D.D.C. 2012)).

\* \* \*

Plaintiff also requests leave to amend any identified pleading deficiencies. See Opp. at 1. Notwithstanding the fact that "Rule 15(a) provides that leave to amend shall be freely given when justice so requires, a bare request in an opposition to a motion to dismiss — without any indication of the grounds on which amendment is sought — does not constitute a motion within the contemplation of Rule 15(a)." United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1259 (D.C. Cir. 2004) (quoting Kowal v. MCI Communications, Corp., 16 F.3d 1271, 1280 (D.C. Cir. 1994)). The request will thus be denied.

IV.   **Conclusion**

For the foregoing reasons, the Court will grant the Motion. A separate Order consistent with this Opinion shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: July 11, 2025